<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SYSTEM COUNCIL U-3 OF THE INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, :<br><br>Plaintiff, :<br><br>·v :<br><br>JERSEY CENTRAL POWER & LIGHT COMPANY, a FirstEnergy Company, :<br><br>Defendant. : | Civil Action No.  07-5248 (SRC)<br><br>**OPINION** |

<u>**CHESLER, U.S.D.J.**</u>

This matter comes before the Court on two motions: 1) the motion for summary judgment (Docket Entry No. 12), pursuant to Federal Rule of Civil Procedure 56, confirming the arbitration award, pursuant to 29 U.S.C. § 185, by Plaintiff, System Council U-3 of the International Brotherhood of Electrical Workers; and 2) the cross-motion for summary judgment (Docket Entry No. 14), pursuant to Federal Rule of Civil Procedure 56, on the counterclaims to vacate the arbitration award, pursuant to 29 U.S.C. § 185, by Defendant, Jersey Central Power & Light Company ("Defendant" or the "Employer" or "JCP&L").  For the reasons set forth below, Plaintiff's motion for summary judgment will be granted, and Defendant's motion for summary judgment will be denied.

**BACKGROUND**

This case arises out of a labor dispute submitted to arbitration.  The following facts are undisputed.  Briefly, Plaintiff is a labor union of electrical workers who are employed by Defendant.  On December 29, 1999, Plaintiff and Defendant executed a collective bargaining agreement (the "Agreement" or "CBA"), effective November 1, 1999.  (See JA 210-278.[1])  With extensions, the Agreement remained in effect during the period at issue, December 6, 2002 through May 20, 2004.  A dispute arose between the parties over the policy,  procedures, and enforcement of the Employer's "call-out policy," also known as a "call-out response requirement."  (JA 254.)  As explained by Plaintiff:

> 'Callout' is a word that refers to an employer's notification to an employee during off-duty hours and off-duty days to report for overtime work.  To be 'oncall' refers to an employer's requirement that an off-duty employee remain available while not at work to receive callout calls and be ready, willing, and able to accept the callout and promptly report for callout work.

(Pl.'s MSJ Br. 3 n.2.)

The dispute arose from a change in call-out policy instituted by the Employer on December 6, 2002.  On December 9, 2002, Plaintiff, contending that the new call-out policy violated the terms of the Agreement, grieved on behalf of all employees subject to the policy.  After the grievance process concluded, Plaintiff submitted the dispute to the American Arbitration Association for appointment of a neutral arbitrator.  A three-person panel, composed of the neutral arbitrator and one member designated by each party, conducted the arbitration.  The parties stipulated to the issues subject to the arbitration:

---

[1] "JA" refers to the joint appendix submitted by the parties in support of these two motions.

Did the company institute a call-out response policy inconsistent with the parties' collective bargaining agreement?  If so, what shall be the appropriate remedy?

(JA 8.)

The arbitration began in 2003.  The panel ordered a bifurcation of the proceedings into a liability phase and a damages phase.  On the issue of liability, the panel found that Appendix B.2 of the Agreement limited the Employer to the right to "reinstate a minimum call-out response policy," (JA 254).  (JA 67.)  The panel determined that the new callout policy was not a minimum policy.  (Id.)  On May 20, 2004, the panel issued an interim award on liability, sustaining the grievance and finding that the new call-out policy was "not in compliance with the collective bargaining agreement."  (JA 75.)  The interim award ordered the Employer to cease and desist from using the new policy.  (Id.)

As to damages, the interim award of September 7, 2005 set forth the rationale for the panel's damages determination.  (JA 157-159.)  In summary, the panel's reasoning contained these steps: 1) the new call-out policy "did, in fact, impact upon the personal lives of all affected individuals"  (JA 157); 2) the imposition of the policy "deprived employees of options that they previously had," with emphasis on the option of being placed on the "H" list,[2] (Id.) and "created a 24/7 situation" (JA 158); 3) the Employer must "compensate those employees for the loss of those options" (Id.); 4) in determining damages, as a point of reference, the panel looked to the Agreement provisions for "pager pay" for customer service representatives – $25 per weekday

---

[2] The award explained: "If [employees] were on the 'H' list they knew they were not going to be called in at all unless there was an emergency . . . Prior to December 6, 2002, if an employee wished to remain on the 'H' list, they were free to do so . . . Bullet 4 [of the new policy memo] removed the opportunity for an employee to leave work at the end of the day of workweek [sic] and know – unless there was an emergency – they would not be called to respond to a callout."  (JA 149.)

and $30 per weekend day (JA 153-154); 5) pager pay is pay for being on call (JA 158); and 6) the compensation "for being required to be on a 24/7 work schedule" due to being on call under the new call-out policy should be set at $25 per weekday and $30 per weekend day (JA 160).

The September 7, 2005 interim award on damages determined that, "for the period of December 6, 2002, up to and including May 20, 2004, all affected employees are to be paid $25.00 per day Monday through Friday and $30.00 per day on weekends for being required to be on a 24/7 work schedule." (JA 160.)

On October 26, 2007, the panel issued the final award, which stated:

The Board's May 20, 2004 interim Award determined that the Employer's new Call-Out Procedure implemented on December 6, 2002, was violative of the then Agreement. As such, the Employer was ordered to cease and desist from using the December 6, 2002, Call-Out Procedure and shall use the call-out policy/procedure in effect on December 5, 2002.

The Board's September 7, 2005 interim Award determined that the bargaining unit employees wrongfully placed on call under the December 6, 2002, Call-Out Procedure between December 6, 2002, and May 20, 2004, are entitled to damages of $25.00 per weekday and $30.00 per weekend day when being on call under that Procedure.

(JA 173.)

On October 31, 2007, Plaintiff the instant action in this Court, seeking confirmation of the final award of the arbitration panel. Defendant filed counterclaims to vacate the final award. Plaintiff has moved for summary judgment confirming the final award; Defendant has cross-moved for summary judgment on its counterclaims to vacate the final award. On October 20, 2008, this Court heard oral argument on the two motions.

4

<u>**ANALYSIS**</u>

**I.      Legal Standard**

      A.      <u>Motion for summary judgment</u>

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" <u>Marino v. Indus. Crating Co.</u>, 358 F.3d 241, 247 (3d Cir. 2004) (quoting <u>Anderson</u>, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." <u>In re Bressman</u>, 327 F.3d 229, 238 (3d Cir. 2003) (quoting <u>United States v. Four Parcels of Real Property</u>, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." <u>Celotex</u>, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists.  Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985).  The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial.  Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995).  "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment."  Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").  "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."  Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

B.     Judicial review of an arbitrator's decision

In United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960), the Supreme Court set forth the fundamental principles for judicial review of the decisions of labor arbitrators, pursuant to 29 U.S.C. § 185 and the Labor Management Relations

Act:

> When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem.  This is especially true when it comes to formulating remedies.  There the need is for flexibility in meeting a wide variety of situations.  The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency.  Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice.  He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement.  When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

Judicial review of an arbitrator's decision is limited to the inquiry into whether or not the

award draws its essence from the collective bargaining agreement:

> It is only when the arbitrator strays from interpretation and application of the agreement and effectively "dispenses his own brand of industrial justice" that his decision may be unenforceable.  When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's "improvident, even silly, factfinding" does not provide a basis for a reviewing court to refuse to enforce the award.

Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001) (citations omitted).

Third Circuit law provides this additional guidance for the Court's determination of

whether the award draws its essence from the collective bargaining agreement:

> It is [] not the role of a court to correct factual or legal errors made by an arbitrator.  A district court may determine only whether or not an arbitrator's award 'draws its essence' from the parties' collective bargaining agreement, and we apply this same standard in reviewing the arbitration award.  Once a court is satisfied that an arbitrator's award draws its essence from a collective bargaining agreement, it is without jurisdiction to consider the award further.

> An award draws its essence from a collective bargaining agreement if its interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention.  As a general rule, we must enforce an arbitration award if it was based on an arguable

7

interpretation and/or application of the collective bargaining agreement, and may only vacate it if there is no support in the record for its determination or if it reflects manifest disregard of the agreement, totally unsupported by principles of contract construction.

Brentwood Med. Assocs. v. UMW, 396 F.3d 237, 240-241 (3d Cir. 2005) (citations omitted).

## II.     The motions for summary judgment

### A.     Plaintiff's motion for summary judgment

Plaintiff moves for summary judgment confirming the final award, contending that the interim and final awards draw their essence from the Agreement.  The parties agree that there are no genuine disputes as to any material fact and that this matter may be resolved by the Court as a matter of law.  In view of the strict limits placed by the law on the district court's powers of review, and because of the highly deferential nature of the legal standard under which this review is performed, this Court first reviews the awards in the light of Defendant's arguments in opposition to Plaintiff's motion.

Defendant, at this juncture, does not make arguments which specifically attack the panel's determination of liability; rather, Defendant contends that the central issue before the Court is that, during the damages phase, the neutral arbitrator "deprived JCP&L of the opportunity to present its evidence on damages, exclaiming he had 'heard enough.'" (Def.'s Opp. Br. 1.) Defendant does offer other arguments, but this states its main contention.

To begin with, as a general statement, most of Defendant's arguments both in opposition to Plaintiff's motion and in support of the cross-motion miss the mark because they either fail to apply the correct legal standard or they mischaracterize the actual decision the panel made, or both.  A number of Defendant's arguments are variations on a theme: the panel's decisions –

both the main decisions and intermediate ones – are wrong.  The Supreme Court has repeatedly rejected this argument, often by citing <u>Misco</u>: "But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."  <u>United Paperworkers Int'l Union v. Misco, Inc.</u>, 484 U.S. 29, 38 (1987).  Thus, without more, even decisions containing serious errors will not be disturbed by the reviewing court.

Defendant relies primarily on the argument that the award should be vacated because the panel denied the Employer the opportunity to present rebuttal evidence as to damages and thereby deprived it of a fair hearing.  Defendant cites to <u>Newark Stereotypers' Union v. Newark Morning Ledger Co.</u>, 397 F.2d 594, 599 (3d Cir. 1968), in which the Third Circuit held that an arbitrator's error in the rejection of evidence "must be one that is not simply an error of law, but which so affects the rights of a party that it may be said that he was deprived of a fair hearing."  Defendant fails to persuade this Court that the panel's refusal to allow it to present damages evidence deprived the Employer of a fair hearing.  As will be discussed further below, this evidence decision was a logical result of the panel's overall conceptualization of the injury, the remedy, and the method for valuing damages.  As a result of the panel's reasoning in these areas, it found that the Employer's proposed evidence was not relevant and, to the extent that it might have relevance, it would be repetitive.  (JA 150.)  The panel's refusal to hear evidence it considered to be repetitive and irrelevant did not deprive Defendant of a fair hearing.

Furthermore, "procedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide."  <u>Howsam v. Dean Witter Reynolds</u>, 537 U.S. 79, 84 (2002) (citing <u>John Wiley & Sons, Inc. v. Livingston</u>,

376 U.S. 543, 557 (1964)).  The case of <u>Official & Prof'l Emples. Int'l Union, Local No. 471 v.</u>

<u>Brownsville Gen. Hosp.</u>, 186 F.3d 326, 335 (3d Cir. 1999), cautions district courts about

deference to procedural decisions like the one Defendant challenges.

In <u>Brownsville</u>, the district court had remanded a case to the arbitrator, instructing the

arbitrator not to consider a particular argument, and supporting evidence, by one party.  <u>Id.</u> at

334.  Citing <u>Wiley</u>, the Third Circuit affirmed the district court's order of remand, but expressed

concern that the district court was directing the arbitrator's decisions about procedural issues:

> Arbitrators have wide latitude in how they conduct proceedings.  *See Association*
> *of Flight Attendants v. USAir, Inc.*, 960 F.2d 345, 349 (3d Cir. 1992) ("Once the
> parties are obligated to submit a dispute to arbitration, then 'procedural questions'
> growing out of the dispute and bearing on its final disposition are to be left to the
> arbitrator.")

<u>Id.</u> at 334-335.  The Third Circuit modified the district court's order of remand to eliminate the

limitation on the argument and evidence the arbitrator might hear, stating: "The relevance, if any,

of that information is up to the arbitrator."  <u>Id.</u> at 335.

The <u>Brownsville</u>, <u>Wiley</u>, and <u>Howsam</u> line of cases makes clear that arbitrators have

"wide latitude" to decide what evidence to hear, and this Court has no authority to intrude on

such decisions.  This Court defers to the panel's determinations of the relevance of particular

evidence.

Defendant argues that the panel "precluded the Union from offering, and the Company

from rebutting, evidence that the 2002 Procedure actually interfered with employees' lives away

from work."  (Def.'s Opp. Br. 6.)  This actually undercuts Defendant's central argument:

evidence of actual interference with employees' lives away from work does not appear to be

relevant to the panel's damages analysis.  Defendant misunderstands the panel's reasoning.  The

panel did not award damages as compensation for actual interference with employees' lives away from work. Rather, the panel awarded damages as compensation for the loss of the <u>option</u> of not being on call, or, alternatively, as compensation "for being required to be on a 24/7 work schedule."[3] (JA160.) Defendant fails to persuade that this "central issue" provides any basis to vacate the award. Notably, Defendant does not dispute the panel's finding that the new policy affected employees by requiring them to be on a 24/7 work schedule.

Furthermore, Defendant attempts to paint the picture of a decision in which the panel awarded damages without any evidence that the policy impacted the lives of employees. This is not supported by the decision: the panel found that the evidence obtained during the liability phase was sufficient to demonstrate that a policy requiring an employee to be on call 24/7 impacted employees sufficiently to constitute an injury which merited compensation. Nor does the decision support Defendant's contention that the panel made no determination about the relevance of the Employer's damages evidence: the panel found it irrelevant and repetitive. (JA 150, 153.) In short, while the panel decided that it did not need more evidence, it is incorrect to say that it made its decision without evidence.

Defendant next contends that the award should be vacated because it is punitive, but gives no analysis to support this argument. Defendant also contends that Plaintiff is judicially estopped from opposing Defendant's action to vacate the award. This is meritless, for at least three reasons. First, Plaintiff's position in favor of bifurcation during the arbitration is not contrary to its opposition to Defendant's motion for summary judgment on its counterclaims now. Second, Defendant does not even suggest that Plaintiff's interests have materially changed

---

[3] Throughout the briefs, Defendant fails to recognize this essential distinction.

and that such change has produced a change in legal strategy.  Third, Plaintiff offers no case law

to support the application of judicial estoppel to a position in an arbitration and a position during

subsequent judicial review of that arbitration.

Defendant's opposition brief incorporates by reference a number of arguments presented

in its opening brief in support of its cross-motion for summary judgment.  Such arguments will

be discussed below.  Because this Court has rejected them, they fail to defeat Plaintiff's motion

for summary judgment.

Defendant has failed to defeat Plaintiff's motion for summary judgment.  Plaintiff has

shown that it is entitled to judgment in its favor as a matter of law, and its motion for summary

judgment confirming the award will be granted.

Plaintiff moves also for an award of pre-judgment interest, costs and attorneys' fees.  The

parties do not dispute that the decision about such an award is committed to the Court's

discretion.  See Feather v. United Mine Workers, 711 F.2d 530, 540 (3d Cir. 1983); Mobil Oil

Corp. v. Independent Oil Workers Union, 679 F.2d 299, 305 (3d Cir. 1982).  Plaintiff argued to

the panel that it was entitled to an award of pre-judgment interest, costs and attorneys' fees, and

the panel ruled against it.  (JA 155.)  Plaintiff has not shown this Court any reason to decide

these matters differently.  The request for pre-judgment interest, costs and attorneys' fees will be

denied.

B.    Defendant's motion for summary judgment

Defendant moves for summary judgment on its counterclaims, which seek to vacate the

interim and final awards, with three groups of arguments: 1) the panel wrongfully denied

Defendant its right to present evidence regarding damages, made a damages determination

unsupported by the record, and exceeded its powers in doing so; 2) the panel erred in deciding that the Supplemental Rules were inapplicable; and 3) arguments regarding agreements in 1993 and 1996.

> 1.    *Arguments of error in the damages determination*

Defendant contends that the "Board denied JCP&L its right to a full and fair opportunity to offer relevant, probative evidence and have this evidence considered."  (Def.'s MSJ Br. 34.) As already discussed, Defendant makes much of the fact that the panel would not allow it to present evidence pertaining to the damages of individual employees during the damages phase of the arbitration.  This argument is problematic.  During the arbitration, the panel considered Defendant's argument that JCP&L should have the opportunity to call rebuttal witnesses on the issue of damages.  (JA 147-148.)

The 2005 interim award devotes several pages to discussion of the issue of whether to grant the Employer's request to "present rebuttal witnesses to offer testimony concerning the damages in this case."  (JA 147.)  The panel recited a number of considerations which informed its decision.  One key point concerned what the panel referred to as "bullet 4" of the new procedure:

> Therefore, the last bullet of Exh. U-11, the new Call-Out Procedure, was critical in my determination as to whether or not additional witnesses were to be called. That bullet stated: "*Under 5.15 of the Agreement, overtime is to be shared equally among qualified employees in each classification, so far as it is practical.  As such, the Company will be eliminating the multiple list used for call-outs.  The employees who fail to meet the responsibilities of their job, including the contractual are subjecting themselves to discipline up to and including termination of employment.*"
>
> The practical imperative of bullet 4 eliminated the opportunity for flexibility for employees. . . . Bullet 4 removed the opportunity for an employee to leave work at

the end of the day of workweek and know – unless there was an emergency – they
would not be called to respond to a callout.

(JA 149.)

Furthermore, the panel gave substantial weight to the fact that, on March 17, 2004, the

Employer, via a memo from Mr. Steven Morgan, President of JCP&L, granted a blanket amnesty

in regard to violations of the call-out policy.  (JA 151.)  In the decision, the panel stated:

> The enormity of Mr. Morgan's action is incredible to say the least.  It certainly
> appears that the Employer does not recognize the magnitude of that action. . .
>
> For the Employer to now argue that they have the right to ask all 1100 affected
> employees about their personal lives as it relates to an individual's call-out
> response is disingenuous at best.  By granting a pardon to the affected employees
> the Employer waived its right to examine each and every affected bargaining unit
> member's personal lives concerning individual call-out response rates.

(JA 151-152.)  The panel thus concluded that, because the Employer had waived its right to

examine each employee's personal life concerning the call-out policy, it had, as a practical

matter, waived any right it might have had to seek determination of damages on an individual

basis.

Lastly, the 2005 interim award makes clear that the panel decided that the testimony of

rebuttal witnesses regarding damages would be largely irrelevant and non-probative; to whatever

extent it might be relevant, similar evidence had already been received and more testimony

would only be repetitive.  (JA 150.)  The panel decided that it was able to arrive at a damages

decision based on the evidence it had obtained in the liability phase, which showed that the new

policy had sufficiently impacted employees to constitute an injury.  "To call all individual

employees or a representative sampling of individual employees just continues to prolong this

case."  (JA 150.)

14

To review the panel's decision that it had received sufficient evidence to make a decision on damages, this Court looks to how the panel conceptualized the injury, the appropriate remedy for the injury, and the methodology for determining damages.  The panel decided that the injury was that the call-out policy deprived employees of options that they previously had, particularly the option of electing placement on the 'H' list, and that it required employees to be on call for work outside of on-duty hours.  The remedy for the injury was compensation of those employees for the loss of those options and for the value of the time spent being on call.  The next issue the panel addressed is the methodology for determining damages: how should the loss be valued? The panel decided that the best way to appraise the value of time spent by an employee on call was to look within the collective bargaining agreement.  The panel found that that Agreement placed a value on time spent on call for employees in another classification, customer service representatives.  The panel decided that it would appraise the value of time spent on call for affected employees by referring to the value negotiated for customer service representatives in the Agreement, and it used this valuation to calculate the award of damages.

This is the panel's reasoning, and Defendant's arguments fail to apprehend it.  When Defendant argues that it should have been allowed to produce additional relevant, material evidence, the Court necessarily queries how it would have been relevant.  Defendant offers four examples of evidence it wanted to present, one of which is: "Testimony that under the Side Letter only employees in the line and troubleshooter classifications were eligible for the A and H lists." (Def.'s MSJ Br. 40.)  It is useful to have these examples of proffered evidence because they show three things: 1) a big problem with the arguments about these pieces of evidence is that they ask the Court to disturb factual determinations, to which the Court accords great deference; 2)

15

Defendant has provided no example which suggests even that the panel engaged in "improvident" factfinding, much less that the panel was dispensing its "own brand of industrial justice," Garvey, 532 U.S. at 509; and 3) these examples – like many of Defendant's arguments – fail to land even close to the mark because the argument does not target the actual reasoning of the panel. Moreover, Defendant faces a very high hurdle with this line of argument because, to prevail, it would require that this Court find that a relevance determination by the arbitrators was not merely wrong, but that the impact of that wrong determination was of such magnitude that the decision as a whole does not draw its essence from the CBA.

Even if this Court agreed – which it does not – that the panel did not give Defendant a full opportunity to present all the evidence it desired, Defendant's approach still strays from the relevant legal test: did the decision, as a whole, fail to draw its essence from the CBA? Defendant does not even assert that, as a result of the panel's evidentiary decision, the arbitration award fails this test.

Defendant next argues that the record contains no evidence of legally cognizable loss. Again, Defendant's brief offers many case citations but virtually no analysis to support this argument. (Def.'s MSJ Br. 40-44.) Moreover, this argument is a non-starter, since the Employer entered into a CBA in which it agreed to compensate certain employees for time spent on call. The panel decided that affected employees should be compensated for time spent on call, and looked at the Agreement to help determine what this compensation should be. This does not even come close to being silly or improvident, but even if this Court believed it to be so, the decision is far from being one with "no support in the record for its determination" or that fails to

draw its essence from the CBA.  Brentwood, 396 F.3d at 241.[4]

Defendant next argues that the evidentiary record does not support an award of damages to even one person.  Again, this argument fails both to apply the correct legal standard and to target the decision the panel actually made.

Defendant next argues that the board exceeded its powers by awarding pager pay damages.  This relies on mischaracterization of the panel's decision.  The panel made clear that it was not authorized to award pager pay to the affected employees and that it was not doing so. (JA 154.)

Defendant next argues that the award should be vacated because the panel awarded damages to persons who were never eligible to be placed on the A or H lists.  Again, Defendant here only casts aspersions,[5] making no reference to the applicable legal standard nor offering any analysis in support.

Lastly, Defendant argues that the award of damages was improper because the panel did not require the Union to prove damages.  This merely repeats the issues already discussed.

>2.    *The panel erred in deciding that the Supplemental Rules were inapplicable*

In the 2005 interim award, the panel decided that the American Arbitration Association's October 8, 2003 Supplemental Rules for Class Arbitrations were not applicable to the arbitration. (JA 137-143.)  Defendant contends that this decision warrants vacatur.  Again, Defendant fails to

---

[4] Furthermore, Defendant characterizes the evidentiary record as "scanty" rather than non-existent.  (Def.'s MSJ Br. 44.)  This seems like a concession that there was at least some record evidence to support the panel's finding that affected workers sustained an injury.

[5] "[T]he Board engaged in misbehaviors that require vacating the Awards."  (Def.'s MSJ Br. 50.)  Third Circuit law does not apply a misbehavior standard to review of an arbitrator's decision.

even enter the ballpark of the applicable legal standard.  Even if this Court disagreed with the
panel's decision about the Supplemental Rules, Defendants have not come close to showing that
this error is of sufficient magnitude that the decision, as a whole, does not draw its essence from
the CBA.  Rather, Defendant argues that, had the panel correctly decided that the Supplemental
Rules applied, it would have referred the damages phase to the American Arbitration Association
for appointment of a class arbitrator and further arbitration.  (Def.'s MSJ Br. 55.)  This argument
boils down to the contention that there should have been new arbitrators for the damages phase.
Defendant does not explain how it was prejudiced by having the same panel arbitrate both
liability and damages nor how a change in panel would have had any impact on the outcome.
This argument fails to raise a credible question about whether the decision draws its essence from
the CBA.

Furthermore, the 2005 interim award begins by stating:

The parties stipulated to the following issue:

Did the company institute a call-out response policy inconsistent with the parties'
collective bargaining agreement?  If so, what shall be the appropriate remedy?

(JA 8.)  Defendant does not dispute this.  (Def.'s MSJ Br. 56.)  This Court does not perceive
how, if Defendant agrees that the Board had jurisdiction to determine the appropriate remedy, it
can contend that the panel exceeded its powers by determining damages.

### 3.    *Arguments regarding agreements in 1993 and 1996*

Lastly, Defendant argues that the panel exceeded its jurisdiction by interpreting rights
under agreements from 1993 and 1996.  This argument relies on Third Circuit law limiting the
panel's jurisdiction to the scope of the parties' submission:

18

> [A]n arbitrator has the authority to decide only the issues actually submitted. . . . It is the responsibility of the arbitrator in the first instance to interpret the scope of the parties submission, but it is within the courts' province to review an arbitrator's interpretation. . . . [O]ur review of the interpretation of a submission is highly deferential.

Matteson v. Ryder Sys., 99 F.3d 108, 112-113 (3d Cir. 1996).

Defendant's argument suffers from multiple problems. To start with, the argument is fatally flawed by contradiction: Defendant contends that the 1993 side letter was outside the scope of the panel's jurisdiction, but that the 1996 agreement suspending the 1993 side letter was within the scope of the panel's jurisdiction, and was improperly disregarded. These positions are impossible to reconcile.[6] Second, in view of Third Circuit authority that holds that review of the panel's interpretation of the scope of the submission is highly deferential, Defendant has given this Court no basis to question any of the panel's decisions as to scope. Lastly, the panel's decision on liability in the 2004 interim award turned on the interpretation of the language of Appendix B.2 and the determination that, under that interpretation, the new call-out policy violated the terms of the Agreement. Defendant does not persuade this Court that such an analysis was outside the scope of the parties' submission.

Defendant next challenges the panel's interpretation of Appendix B.2 of the Agreement, regarding the Employer's right to "reinstate a minimum call-out response policy," (JA 254). (See, e.g., JA 70 (interpreting Appendix B.2).) Again, it is not sufficient under the law to argue that the panel's interpretation of the CBA was erroneous. Absent an interpretation so

---

[6] A further contradiction: at the top of page 56, by way of an introduction to this argument, Defendant contends that "the Board . . . unlawfully disregarded the parties' 1996 Agreement which suspended the A and H List procedure." (Def.'s MSJ Br. 56.) At the bottom of the same page, Defendant writes: "The Board had no authority to interpret the . . . 1996 Agreement." (Id.)

unreasonable that it can be said to not draw its essence from the Agreement – which Defendant does not contend here – this argument cannot succeed.

Defendant's motion for summary judgment on its counterclaims will be denied.

**III.    Discussion**

This Court has reviewed the two interim awards and the final award of the arbitration panel.  The parties agree that summary judgment is appropriate at this juncture, that there are no genuine issues as to any material facts, and that this Court may enter judgment as a matter of law, pursuant to Rule 56.

As to the determination of liability, and the determination of the amount of damages, this Court finds that the panel's reasoning and decision are rational.  There have been no allegations of fraud, dishonesty, or misconduct, nor has Defendant argued that the decision is contrary to public policy.  There is no basis to find that the panel ignored the plain language of the collective bargaining agreement.  Nor is there any basis for this Court to find that the panel imposed its own brand of industrial justice.

The decision draws its essence from the collective bargaining agreement.  As to the decision on liability, the panel determined that the new call-out policy required employees to spend off-duty time on call without compensation in violation of the terms of Appendix B.2 of the Agreement.  As to damages, the panel looked to the terms of the Agreement to establish the value of time spent on call and, thus, appropriate compensation.  The panel's interpretations of the Agreement are rationally derived from the Agreement, and this Court determines that the record contains support for the panel's determinations.  Because this Court concludes that the arbitration panel's interim and final awards draw their essence from the collective bargaining

agreement, under Brentwood and other controlling authority, the final award must be confirmed. Plaintiff's motion for summary judgment will be granted, and the final award will be confirmed. Defendant's cross-motion for summary judgment on its counterclaims will be denied.

In view of the entry of judgment confirming the arbitration award, Defendant's counterclaims, which seek to vacate the award, will be dismissed with prejudice.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment confirming the arbitration award (Docket Entry No. 12) is granted, and Defendant's motion for summary judgment on its counterclaims to vacate the award (Docket Entry No. 14) is denied.  Judgment confirming the final award of the arbitration panel is hereby entered in Plaintiff's favor. Defendant's counterclaims are dismissed with prejudice.


    s/ Stanley R. Chesler
STANLEY R. CHESLER, U.S.D.J.


Dated: February 25, 2009